CAMPBELL COAL COMPANY ET AL. *v* MELISSA C. STUBY.

[No. 36, April Term, 1930.]

*Decided June 11th, 1930.*

282

The couse was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*William C. Walsh* and *Willis R. Jones, Assistant Attorney General,* for the appellants.

*Saul Praeger,* for the appellee.

Pattison, J., delivered the opinion of the Court.

Charles E. Stuby, husband of the claimant, Melissa C. Stuby, was fatally injured on June 28th, 1928, while working for the Campbell Coal Company, one of the appellants, and, as a result of that injury, died on the 2nd day of July following. Notice of the injury, proof of death, and claim of the dependent widow, were duly filed with the State Industrial Accident Commission in accordance with the statute. The employer was insured in the State Accident Fund, and after all of said statutory requirements had been complied with, an award was made by the commission to the widow, Melissa C. Stuby, sole dependent of Charles E. Stuby, on September 19th, 1928, in which award the weekly wage of the deceased employee was found to be $9.47, and compensation was awarded at the rate of $8 per week, payable for the period of 415 5/7 weeks, commencing July 2nd, 1928, plus an additional award for funeral expenses of $125.

The case was reopened upon the petition of the claimant, and, after hearing, the original award of the commission was, on June 1st, 1929, affirmed. An appeal was taken by the widow from the award of the commission to the Circuit Court for Allegany County, and upon trial therein the findings of the commission were reversed and the jury by their verdict found the average weekly wage of Charles E. Stuby to be $15 per week. Whereupon judgment was entered, and it is from the judgment so entered that this appeal was taken.

In the trial of the case in the lower court, twelve exceptions were taken; ten to the admission of evidence and two to the rulings of the court upon the prayers.

The widow, Melissa C. Stuby, when placed on the stand in support of her claim, testified that her husband worked for the Campbell Coal Company in the years 1926, 1927, and 1928, he having started to work for that company in 1925. That his weekly earnings for 1928 were $24, and that his earnings for 1927 were $30. That in the years 1926, 1927, and 1928, he "worked every day that (the Campbell Coal Company) had work for him" to do. She further testified that "of course he had to work other places to make a living. He did not have work enough. When a man has a place of employment and cannot make a living, he has to go out and work some place else." Counsel for the defendant company then moved "to strike out from the record the testimony of this witness that indicates her husband earned money elsewhere than in the mine * * * on the theory it has nothing to do with the average weekly wage which he got from the Campbell Coal Company." This motion was overruled, and the court's ruling thereon constitutes the first exception.

Charles Stuby, the son of the deceased, was next called in support of the claim of his mother. He was asked what other work did he (his father) do outside of digging coal for the Campbell Coal Company? An objection was made to this question, but the objection was overruled and the second exception noted thereto. In reply to this question the son said: "Well, he worked around odd jobs anything he could get

carpenter's work, stone work." He was then asked: "When he was not working in the mines he was doing some other work?" Defendants' counsel then said: "We would like to have a general objection to all of this testimony," to which the court replied, "I understand there is a general objection and exception to all of it." The third exception was then taken, though there was no answer to the question last asked. The witness was then withdrawn and Melissa C. Stuby was again called to the stand. She was asked: "What work and labor did your husband do during the year 1928, other than working for the Campbell Coal Company?" Objection was made to this question and, upon its being overruled, the fourth exception was noted. This question too was unanswered. She was then asked: "You say your husband's earnings over a week were $24? Ans. $24 a week." The record then shows that an objection was made thereto, which was overruled, and the fifth exception was noted. She was then asked: "What other work did he do for the Campbell Coal Company during that period? Ans. Well, just whatever work he could get." The defendants' counsel then inquired whether this testimony was admitted subject to exception, and was told by the court that it was; nevertheless, the sixth exception was noted. Witness was then asked: "You know of your own knowledge that his earnings were $24 a week during the year 1928? Ans. Yes, sir." And when asked by the court, "You mean those earnings came from the Campbell Coal Company?" her answer was, "Yes, sir." After cross-examination of this witness, the counsel for claimant asked that he be permitted to show by her that Charles E. Stuby, while working for the Campbell Coal Company on September 26th, 1926, had sustained an injury and the commission found that his average weekly earnings, at that time, were $30 a week; and while still working for said company, he again sustained an injury on the 29th day of November, 1927, and the commission found that his average weekly wage at that time was $18 a week. At both of these times the State Accident Fund was the insurer. The defendants' counsel objected to the introduction of this evidence, and the

court sustained his objection. A proffer was then made which applied only to the finding of the commission as to the injury sustained on November 29th, 1927, and the court permitted the evidence to be offered. It was to this action of the court in allowing this evidence to be introduced that the seventh, eighth, and ninth exceptions were taken. The defendants then offered a statement showing what amounts had actually been paid to the deceased by the Campbell Coal Company, beginning with September, 1926, and ending with June, 1928. Thereafter claimants' counsel asked to be permitted to introduce in rebuttal the finding of the commission establishing the average weekly wage of the deceased at the time of the injury on September 26th, 1926, at $30, which he was permitted to do, over the objection of the defendants' counsel. This ruling of the court constitutes the tenth exception.

The first six exceptions were to the admission of evidence offered by the claimant that the deceased at times, within the period of his employment by the Campbell Coal Company, worked for others. The introduction of this evidence was objected to upon the ground that whatever he earned outside of his employment by said company was not to be considered in ascertaining the average weekly wage of the deceased upon which the award of the commission was to be made. If it were shown that the deceased worked for others within the time stated above, and the money received by him for such work formed part of the amount of his earnings considered and used in ascertaining his average weekly wage, the contention of the defendants would at least be entitled to the very thoughful consideration of this court. *Picanardi v. Emerson Hotel Co.*, 135 Md. 92; *Andrejwski v. Wolverine Coal Co.*, 182 Mich. 298, Ann Cas. 1916D, 724; *Schneider on Workmen's Compensation Law*, vol. 2, page 1155. But we need not pass upon that question, as there is no evidence in this case showing that the money received for other work done by the deceased was considered in ascertaining his average weekly wage. Both the claimant and her son testified that the deceased worked for others, though neither of them

said that the money received therefor was considered and used in ascertaining his average weekly wage; on the contrary the claimant stated, in reply to the court's question, that the amount, $24, which she said was his weekly earnings, came from the Campbell Coal Company. It may also be said that by the third prayer of the defendant, a granted prayer, the jury were told that in ascertaining the average weekly wages of the deceased, they were confined to the wages earned by him as a coal miner when working for the Campbell Coal Company.

The seventh, eighth, and ninth exceptions were to the admission in evidence of the commission's finding of the average weekly wage of the deceased at the time of his injury on November 29th, 1927, and the tenth exception was to the admission, in rebuttal, of the commission's finding of the average weekly wage of the deceased at the time of his injury on September 26th, 1926.

The question to be decided was the average weekly wage of the deceased at the time of his injury on June 28th, 1928, which resulted in his death. To determine this question it was necessary to consider his prior earnings starting at some earlier time. It is urged by the defendants that the evidence introduced under these exceptions should not have been admitted, because the findings of the commission related to times too remote or too far removed from the date of the injury. The court excluded the finding of the commission as to the earlier injury of 1926, but admitted its finding of November 29th, 1927, which was only seven months prior to the happening of the accident resulting in the death of Stuby. As the length of time to which the jury may go back in considering the prior earnings of the injured or deceased person in ascertaining his average weekly wage at the time of his injury or death is not fixed by our statute, as in some jurisdictions, the determination of such question is left largely to the discretion of the jury, to be exercised by them according to the facts and circumstances of each particular case. The existence of such discretionary power in the jury was recognized by the defendants, as disclosed by their

seventh prayer, wherein they ask the court to instruct the jury that "the average weekly wage of the deceased employee was the total amount the said employee earned over such period of time immediately preceding his fatal injury as the jury may find it necessary to consider in order to arrive at a fair average." It was not, as we have said, until the defendant had introduced in evidence a statement showing the amounts paid by the Campbell Coal Company to the deceased, as wages, commencing so far back as September, 1926, that the earlier findings of the commission were admitted in rebuttal. The evidence introduced under the seventh, eighth, ninth, and tenth exceptions was, we think, admissible, but, if inadmissible for any cause, it was not in our opinion prejudicial to the defendants. These findings of the commission disclosed to the jury that the average weekly wage of the deceased employee was materially diminishing as time went on, the effect of which upon the minds of the jury, would, we think, overcome any possible injury to the defendants which might have resulted from the introduction of this evidence.

The eleventh exception is to the instruction granted by the court in lieu of the instructions asked for by the claimant, while the twelfth exception is to the rejection of the defendants' second, fifth, and seventh prayers, though the defendants no longer contend for the correctness of their second and fifth prayers, but rely on their seventh prayer.

Thus the only questions arising from the rulings of the court on the prayers are those relating to the court's instruction and the defendants' seventh prayer. These the reporter is asked to insert in the report of this case.

In the court's instruction, the jury were told that "the average weekly wage of the deceased employee was the total amount the said employee might have earned working all the time the mines in the region were generally employed over such period of time, immediately preceding his fatal injury, as the jury may find it necessary to consider in order to arrive at a fair average, divided by the number of weeks embraced by such time." While by the defendants' seventh

prayer they were told "the average weekly wage of the deceased employee was the total amount the said employee earned over such period of time immediately preceding his fatal injury as the jury may find it necessary to consider in order to arrive at a fair average divided by the number of weeks embraced by such time." It will be seen that the court's instruction differs from the defendants' seventh prayer in that by the former "the average weekly wage of the deceased employer was the total amount the said employee might have earned working all the time the mines in the region were generally employed over such period of time immediately preceding his fatal injury" as thought necessary by the jury to be considered, while by the latter, his average weekly wage was the total amount he earned over a like period of time, immediately preceding his fatal injury. It was left to the jury by both of these prayers to find that the coal mine of the defendant employer was operated intermittently due to the seasonal character of the business in which such defendant employer was engaged, and that it was usual and customary for other mines, located in the same neighborhood as the employer's mine, to operate in the same or similar manner.

The court's instruction is, we think, in conformity with the statute, which provides that average weekly wage shall be taken to mean "the average weekly wage earned by an employee when working on full time," which in this case was "all the time the mines in the region," including the mine of the Campbell Coal Company, "were generally employed," and is also in accord with the defendants' third prayer granted in this case, where the jury were instructed that "in this case the average weekly wage of the employee is the average weekly wage earned by him * * * when working on full time."

As we find no error committed by the court either in its rulings upon the evidence or upon the prayers, the rulings of the court appealed from will be affirmed.

*Judgment affirmed, with costs.*