AGNES STEVENSON *v.* ROBERT C. HILL ET AL.,
RECEIVERS

[No. 87, October Term, 1936.]

*Decided February 11th, 1937.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Fuller Barnard, Jr.,* and *Clarence Lippel,* for the appellant.

*William A. Gunter* and *Taylor Morrison,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

This is a second appeal in a case under the Workmen's Compensation Act (Code, art. 101, sec. 1, *et seq.,* as amended). See *Stevenson v. Hill,* 170 Md. 676, 185 A. 551. And the present question is one of law. Section 36 (as amended by Acts 1931, ch. 363) provides for awards of compensation to be computed on the basis of the average weekly wages of injured workmen, and section 65 defines "average weekly wages" as "average weekly wages earned by an employee when working on full time." But how is compensation to be computed when during a year before an injury and death there has been no working on full time? Only the one question is pressed on the appellant's brief.

The decedent, an inspector of coal at one of the mines of the Consolidation Coal Company and its receivers, on August 10th, 1933, sustained an injury causing his death, and compensation was duly awarded at the rate of $8 a week, on a finding of average weekly wages earned during the preceding six months of $9.26. Before the expiration of the year allowed for it, the claimant, widow of the deceased, applied for a reopening of the case for consideration of the evidence of some of her husband's pay envelopes to show a larger average of payments made. There was a reconsideration, based finally on figures of the workman's earnings during the preceding year instead of during six months of it, and on the facts found the Commission concluded that the average of weekly wages earned was $10.19, a finding which did not permit an increase in the compensation. Code, art. 101, sec 36, as amended by Acts 1931, ch. 363. On an appeal, ulti-

mately reaching this court, a question of the propriety of the reopening under the statute was raised, and after this court had held it proper, and remanded the case for the hearing on the Commission's finding and award, the hearing was had, and on a ruling of the court that the wages actually earned constituted the basis of computation of compensation, the award was confirmed. Prayers on behalf of the claimant for a ruling that earnings possible during a full operation of the mine should furnish the basis were accordingly rejected. The claimant now appeals from this confirmation of the Commission's award.

Because of the general economic depression, and especially that in coal mining, the mine at which the decedent was employed, Big Vein No. 1, in the George's Creek region, was operated only ninety-two days during the period from February 1st, to August 1st, 1933, and the deceased, working on all those days, earned a total of $239.54, or an average for the weeks included of $9.26. During the period from August 1st, 1932, to August 9th, 1933, the day before the injury, the mine worked 202 days, and the deceased worked on 201 of those days, earning a total of $544.24 during the 53 3/7 weeks included, or an average of $10.19 a week. It was this latter figure that the Commission adopted upon the rehearing, taking a year's earnings instead of those during six months, as the basis of computation. Evidence of an increase in earnings for the work after the death was excluded in the trial court, and no objection to the ruling is pressed on appeal.

All big vein mines of this employer, taken together, worked on an average of 227 days during the year preceding the death, all small vein mines 178 days, and all mines of the employer 203 working days. This employer is the operator of the greater part of the coal mines in the region, but it is not the only operator. There was no evidence that its time of operation was shorter than that of any other mines in the region, and we understand it to be agreed in argument that it was not shorter. The burden of proof of the fact, if it had been shorter, and

the industry in the region as a whole had shown greater time of operation, would have been upon the claimant appealing from the Commission's award; and absence of any proof would require that, in respect to so much of the basis of the award, the finding of the Commission be taken as correct in fact.

The claimant's contention that the basis under the statute is not the average which the workman earned when working at full time of actual operation of the mine, or mines in the region, but that which would have been earned if the mines had been working to capacity, or to the limit of daily and weekly working time in the region, eight hours a day for six days a week, is, as the claimant recognizes, at odds with the definition adopted by the court in *Campbell Coal Co. v. Stuby*, 159 Md. 280, 150 A. 878. The trial court in that case had granted instructions to the jury that the average weekly wages were to be determined by an average of the amount the employee might have earned working all the time the mines in the region generally were employed over a period immediately preceding the injury, and this measure was approved. "The court's instruction," said this court, 159 Md. 280, at page 288, 150 A. 882, "is, we think, in conformity with the statute, which provides that average weekly wage shall be taken to mean 'the average weekly wage earned by an employee when working on full time,' which in this case was 'all the time the mines in the region,' including the mine of the Campbell Coal Company, 'were generally employed.'" And not only was this definition duly applied by the Commission and the trial court in this case, but it has stood as the rule for the Commission and the courts of the state in all similar cases during more than six years. But the claimant asks a further consideration of it because it provides a measure dependent upon the decision of questions of fact which may be in dispute, and difficult to decide, such as questions of the time of work in other mines, and the extent of the region to be covered in the comparison, which might be involved in uncertainty, and because the meas-

ure given does not, as the court held, conform to the statutory definition of wages earned when working on full time.

But even on a reconsideration the court would be unable to agree. It would not be justified in rejecting the measure for fear of difficulty in dealing with facts which may be disputed and doubtful, for it seems to be a workable measure. That it is so must be inferred from a wide adoption of similar measures in statutes which have in terms dealt with discontinuous employment. See, for instance, the Federal Longshoremen's and Harbor Workers' Compensation Act, sec. 10 (b), 33 U. S. C. A. sec. 910 (b) ; *Marshall v. Mahony Co.* (C. C. A.) 56 Fed. (2nd) 74, 78.

The letter of the Maryland statute, which was considered in deciding *Campbell Coal Co. v. Stuby,* taking as the basis of computation "the average weekly wages earned by an employee when working on full time," would not alone require an acceptance of the claimant's interpretation, for "full time" is an expression of questionable application in some circumstances, as this case proves, and "wages earned * * * when working on full time" seems to contemplate that in each particular case wages will appear to have been earned when working on full time ; and in fact there has been no working on full time by the claimant's definition. Comparison of this provision with the more elaborate provisions in statutes of other jurisdictions, dealing expressly with compensation to one employed on discontinuous work, leads us to the conclusion that here, as in still other jurisdictions, the question of basis of compensation in the situation has not yet been dealt with explicitly, and that the general theory and object of the compensation system as adopted must be taken into consideration to determine the basis. And the theory and object are inconsistent with the interpretation of the claimant. The system has as its foundation a correspondence between compensation to be paid and the amounts paid the active workmen according to the pay rolls. The actual earnings are to furnish the basis of calculating the fund to cover the compensation, which

is built up by insurance with an insurance carrier, the State Accident Fund, or by self-insurance. *Picanardi v. Emerson Hotel Co.*, 135 Md. 92, 94, 108 A. 483; *Budowski v. Atlas Steel Co.*, 237 App. Div. 667, 670, 263 N. Y. S. 255. The premiums paid or set aside to constitute the fund are thus ascertained. The actual earnings are taken as determining the risk in loss of earnings or capacity. This correspondence would have to be disregarded to accept the present claimant's contention. The insurance premiums and the fund built up for compensation would lose their relation to the compensation to be paid. Employers distributing work on the share-the-work plan would multiply the responsibility for compensation without any increase in work done. Part time work for the benefit of employees during a time of depression could be provided only under a like disproportionate burden of compensation. Conceivably workmen injured might be entitled to receive much more by reason of their injuries than they could possibly earn at work.

The problem is not new. Previous decisions on it show some difference of opinion, but a majority of courts have held that, as the object of the system is to replace, to an extent, the earnings or capacity for earnings lost by accident, variation in working time, reducing opportunities to earn, must be a factor in the computation of average of weekly wages earned. See study of *Computation of Wage Loss During the Depression under Workmen's Compensation Acts.* 19 Marquette Law Review, 163.

As early as 1909, after several decisions in the lower English courts, the question went to the House of Lords on a case in which an injured miner had worked during the previous year a number of days which summed up as thirty-three weeks, and worked not at all on days making up the remaining nineteen weeks, there having been no work for him during fourteen of those weeks, public holidays and wakes consuming two of them, illness of the workman two more, and a voluntary absence by him the remaining one. Lord Loreburn, with the concurrence of all other judges, said: "The object of the Act

broadly stated is to compensate a workman for his loss of capacity to earn, which is to be measured by what he can earn in the employment in which he is, under the conditions prevailing therein, before and up to the time of the accident. If he takes a holiday and forfeits his wages for a month, then that does not interfere with what he can earn. It is only that for a month he did not choose to earn. So, too, if there be a casualty accidentally stopping the work. But if it is part of the employment to stop for a month in each year, then he cannot earn wages in that time in that employment, and his capacity to earn is less, over the year. I agree with what the learned Master of the Rolls says in his judgment when he uses the following language: 'In my opinion the true test is this: What were his earnings in a normal week, regard being had to the known and recognized incidents of the employment? If work is discontinuous, that is an element which cannot be overlooked.' " *Anslow v. Colliery Co.* (1909) A. C. 435, 437.

In this country, in 1914, the Supreme Court of Michigan, in *Andrejwski v. Wolverine Coal Co.*, 182 Mich. 298, 148 N. W. 684, 687, applied the same rule, upon general principles as well as upon a statute, in a case in which an injured miner had been employed only 148 days in the previous year, and had received a total of only $507.45. "To charge this employment with compensation for injuries to its employees," said the court, "on the same basis as employments which operate during substantially 300 days in the year would be an apparent injustice, as such compensation would be based on the theory of impossible earnings by the employee in that employment which operated upon the average a trifle over two-thirds of a working year." And in *Capone's Case*, 239 Mass. 331, 333, 132 N. E. 32, 33, the court said, "The statute contemplates that compensation is to be paid for diminished capacity to earn wages; and the employee, in common with others, must bear the loss resulting from business depression." In a New York case, *Budowski v. Atlas Steel Co.*, 237 App. Div. 667, 669, 263, N. Y. S. 255, 256,

the court said, "An opportunity to work is as essential to earnings or earning capacity as the willingness or fitness of the laborer. * * * It is the spirit and intent of the statute that industry shall bear a reasonably definite share of the accidental impairment which labor suffers therein; and in a given case this share is to be measured by the earnings or the earning capacity of the laborer injured. Industry is not a fixed and constant market for labor, but varies with the tide of business; and when this source of compensation or indemnity alters, the measure of earnings and of earning capacity, within the statutory limits, must change with it." And see *Littler v. Fuller Co.*, 223 N. Y. 369, 372, 119 N. E. 554. In *Marshall v. Mahony Co.* (C. C. A.) 56 Fed. (2nd) 74, 78, there was a suggestion of doubt of the constitutionality of compensation on the basis of a theoretical full time, because arbitrarily unjust.

No sufficient ground for departing from the definition of average weekly wages in *Campbell Coal Co. v. Stuby, supra,* is therefore found. And there was no error in the action of the court in directing a verdict in accordance with these views.

*Judgment affirmed, with costs.*