REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2615

September Term, 2013

---

PATRICK LONG

v.

INJURED WORKERS' INSURANCE
FUND et al.

---

Eyler, Deborah S.,
Reed,
Salmon, James P.
  (Retired, Specially Assigned),

JJ.

---

Opinion by Salmon, J.

---

Filed: September 30, 2015

A covered worker who is permanently injured in the course of his or her employment, under the Maryland Workers' Compensation Act ("the Act"),[1] is entitled to compensation for lost earning capacity. The amount of compensation an eligible employee is entitled to recover is usually determined by the application of a simple formula, *i.e.*, two-thirds of the employee's average weekly wage ("AWW"), provided, however, that the AWW does not exceed the State's AWW or equal less than $25. *See* Md. Code (2001, 2008 Repl. Vol.), Labor & Employment Article ("LE") section 9-637(a) and (b).[2] AWW includes tips and the reasonable value of housing, lodging, meals, rent, and other similar advantages that the

-------

[1]The Maryland Workers' Compensation Act is set forth in Maryland Code (2001, 2008 Repl. Vol.) Labor & Employment Article, sections 9-101 - 9-1201.

[2]LE, subsections 9-637(a) and (b) read as follows:

Payment of compensation.

   (a) *Amount of payment.* – (1) Except as provided in paragraph (2) of this subsection, if a covered employee has a permanent total disability resulting from an accidental personal injury or an occupational disease, the employer or its insurer shall pay the covered employee compensation that equals two-thirds of the average weekly wage of the covered employee, but may not:
        (i) exceed the State average weekly wage; or
        (ii) be less than $25.
     (2) If the average weekly wage of the covered employee is less than $25 at the time of the accidental personal injury or last injurious exposure to the hazards of the occupational disease, the employer or its insurer shall pay the covered employee weekly compensation that equals the average weekly wage of the covered employee.
     (3) Payments under paragraph (1) or (2) of this subsection may not exceed a total of $45,000.
     (b) *Duration of payment.* – Notwithstanding the $45,000 limitation in subsection (a)(3) of this section, the employer or its insurer shall pay the benefit for the period that the covered employee is permanently totally disabled.

covered employee receives from the employer. LE § 9-602(a)(2). Usually, the AWW is calculated by taking the gross wages paid to the worker in the 14 weeks immediately preceding the accident and dividing that figure by 14.[3] Under certain circumstances,

_____

[3]The Act allows the Commission "to adopt regulations to carry out this title." LE § 9-309(a). One of the regulations adopted by the Commission that is relevant to the establishment of an AWW is set forth in the Code of Maryland Regulations ("COMAR") 14.09.03.06, which reads, in material part as follows:

A. Preliminary Determination. For the purpose of making an initial award of compensation before a hearing in the matter, the Commission shall determine the claimant's average weekly wage from gross wages, including overtime, reported by the claimant on the employee's claim form.

B. Filing of Wage Statement. As soon as practicable, the employer/insurer shall file a wage statement containing the following information:

(1) The average wage earned by the claimant during the 14 weeks before the accident, excluding the time between the end of the last pay period and the date of injury, provided that periods of involuntary layoff or involuntary authorized absences are not included in the 14 weeks;

(2) Those weeks the claimant actually worked during the 14 weeks before the accident;

(3) Vacation wages paid; and

(4) Those items set forth in Labor and Employment Article, § 9-602(a)(2), Annotated Code of Maryland.

C. Determination at First Hearing.

(1) Calculation of the average weekly wage shall be adjudicated and determined at the first hearing before the Commission.

(continued...)

however, the Workers' Compensation Commission ("the Commission") has discretion to use a longer or shorter period than 14 weeks to determine the AWW. *See Gross v. Sessinghause & Ostergaard*, 331 Md. 37, 50 (1993).

In Maryland, a sole proprietor who devotes full-time to the business of the proprietorship may elect to be "a covered employee." *See* LE § 9-227.

The Act does not specify how the AWW is to be calculated if the injured worker is a sole proprietor and therefore is self-employed. As the Supreme Court of Arizona observed in *Mail Boxes*, *etc.*, *U.S.A. v. Industrial Comm. of Arizona*, 888 P.2d 777 (Ariz. 1995), this creates a definitional problem:

> In reality, sole proprietors are not employees and do not earn wages. A sole proprietor can never be an employee of the business he or she creates because a sole proprietor and the business are one legal entity. A person cannot be

---

[3](...continued)

> (2) All parties shall be prepared to produce evidence from which the Commission can determine an accurate average weekly wage at the first hearing.
>
> (3) If the Commission determines that an inaccurate average weekly wage resulted in the overpayment or underpayment of benefits, the Commission may order:
>
> (a) A credit against future permanent disability benefits;
>
> (b) The payment of additional compensation; or
>
> (c) Any other relief the Commission determines is appropriate under the circumstances.

one's own employee. Nor does a sole proprietor receive a "wage" from the business for his or her services. Thus, using employee language in a nonemployee setting creates definitional problems.

*Id*. at 779.

The aforementioned definitional problem gives rise to the main question presented in this appeal, which is: When the injured worker is a sole proprietor, should his or her AWW be based upon the income of the sole proprietorship after deducting business expenses or upon the gross profit of the sole proprietorship, without considering business expenses? This is a question of first impression in Maryland.

In the case at hand, the Commission decided that the AWW should be based upon the monies the claimant received from the sole proprietorship, after deducting the business expenses shown on claimant's federal income tax return.

The claimant filed, in the Circuit Court for Montgomery County, a petition for judicial review of the Commission's order. The claimant contended that the Commission should have calculated AWW based on the gross income of the sole proprietorship in the relevant period prior to the accident. Alternatively, the claimant contended that AWW should be based on the gross receipts of the sole proprietorship because, purportedly, prior to the accident he paid his insurer, the Injured Workers' Insurance Fund ("IWIF"), premiums based on that amount. The Circuit Court for Montgomery County, after a hearing, affirmed the

decision of the Commission, granted summary judgment in favor of IWIF,[4] and denied

Long's motion for summary judgment.

## I.
## Factual Background

The appellant, Patrick Long ("Long"), at all times here relevant, was the owner of Long Floor Works. Except for Long, no one else worked for that company. Long Floor Works, as its name suggests, is in the business of installing floor covering. Long, prior to 2011, made an election, pursuant to LE § 9-227, to be a "covered employee" under the Act.

At all times here relevant, Long's sole proprietorship performed work, as an independent contractor, for Ryan Homes. Ryan Homes paid the sole proprietorship each week based on the number of hours Long worked.

While installing carpet on July 24, 2011 as a subcontractor for Ryan Homes, Long suffered a severe back injury. Although he was able to return to work temporarily, due to his work-related injury he has not worked since November 2011, and, according to his counsel, it is "likely" that he will be 100% disabled for the rest of his life. About six months after the accident, on January 23, 2012, Long filed a notice of claim with the Commission.

Long filed a federal income tax return for the year 2011 in which he said he received no "wages." He did, however, declare $16,879 in business income for that year. This was

---

[4]Technically, the court also granted summary judgment in favor of the sole proprietorship – a nominal appellee, inasmuch as Long and the sole proprietorship are one-and-the-same.

shown on Schedule C of his federal tax return. That schedule, titled "Profit or Loss From Business," showed that gross receipts of the business for 2011 equaled $44,606 but that Long had incurred business expenses totaling $27,727.[5] Thus, the net profit for the sole proprietorship was $16,879 ($44,606 less $27,727.)

At the hearing before the Commission, the question arose as to how IWIF calculated premiums for workers' compensation insurance. The evidence in that regard was somewhat murky. IWIF sent a letter to Long dated May 15, 2011, which was about two-and-one-half months before the subject accident. The stated purpose of the letter was to obtain information from Long so that IWIF could establish premiums on the policy based on the policy holder's estimate of "payroll."

In response, Long sent back a form dated May 23, 2011. The pre-printed form was captioned "IWIF Premium Audit Report." That form showed that Long represented to IWIF that his "gross wages" for the prior year were $11,077.[6] At the hearing, Long's counsel characterized that "gross wages" calculation as a "mistake." Also introduced into evidence was a letter from IWIF dated March 12, 2012, saying that Long's premium for the prior year (May 15, 2011 through May15, 2012) was $2,416, and that the premium for the next year

---

[5]The business expenses were for: car and truck expenses ($12,346); depreciation ($1,731); insurance ($2,444); office expenses ($3,614); rent or lease of vehicles, machinery and equipment ($263); supplies ($4,889); deductible meals and entertainment ($1,042); and "other expenses" ($1,398).

[6]It appears, although the matter is not free from doubt, that he calculated "gross wages" based on the net profits of his business between May 15, 2010 and May 15, 2011.

would be $2,905, which would be "subject to audit." Documents attached to the letter indicated that the premiums were based on an "audited payroll: for 2009 of $36,900." Apparently, the payroll for 2010 or 2011 had not yet been audited.[7]

The Commission found, on July 15, 2012, that Long had sustained an accidental injury arising out of and in the course of his employment on July 24, 2011 and that he was temporarily totally disabled from August 20, 2011 until September 20, 2011 and from November 1, 2011 "to present and continuing." The Commission also found that Long was temporarily partially disabled from September 24, 2011 until October 21, 2011.

Additionally, the Commission found, on July 15, 2012, based on information provided exclusively by Long, that Long's AWW was $1,500, "subject to verification." Based on that preliminary finding, the Commission ordered benefits paid for temporary total disability at the maximum rate of $940 per week.[8]

About two weeks later, on July 28, 2012, Long filed a request for document correction, in which he asked the Commission, among other things, to amend the amount of his AWW to $1,737.11 based on what he termed his "gross wages" for the 14 weeks preceding his accident. The Commission, prior to receiving any response from IWIF, corrected its award of compensation to indicate an AWW of $1,737.11.

---

[7]The letter from IWIF that was introduced does not show how "payroll" was determined; nor was there any testimony presented to the Commission in that regard.

[8]In 2012, the State's AWW was $940. The Commission also awarded Mr. Long temporary partial disability at the rate of 50% of the difference between his AWW and his wage earning capacity in the same employment, not to exceed 50% of the State AWW.

On August 16, 2012, IWIF filed a motion for rehearing regarding Long's AWW. The insurer's request led to a hearing before the Commission about one year later, on August 12, 2013.

At the hearing, IWIF introduced evidence that Long's federal tax return for 2010 showed, on Schedule C, that the sole proprietorship had earned, after deduction of all business expenses, income of $11,747. It was IWIF's position that Long's AWW should be adjusted to $225.90 ($11,747 divided by 52). The claimant's 2011 federal tax return was also introduced. Long's attorney argued, *inter alia*, that AWW should be based on the total income for the sole proprietorship, without deducting any business expenses.

In response to Long's argument, the Commissioner pointed out that Long's counsel was attempting to equate "gross receipts" of the sole proprietorship with "gross wages." The Commissioner indicated that he did not think that the terms were synonymous.

On August 13, 2013, the Commission issued a written order. The order stated that Long's 2011 tax returns provided the "best evidence" of his AWW for 2011. The order shows that the Commission calculated Long's AWW by taking the net income of the sole proprietorship for the year 2011 ($16,879) and dividing that figure by the 34 weeks Mr. Long had worked in the year 2011. This formula yielded an AWW of $496.49.[9]

---

[9]The parties agree that it is unusual in workers' compensation cases for the commissioner who hears the case to explain his or her decision. Nevertheless, in this case, the order filed on August 13, 2013 on behalf of the Commission did provide a full explanation. The order read:

(continued...)

-8-

Long filed a request for rehearing, which the Commission denied.  He then filed a timely petition for judicial review of the Commission's decision concerning his AWW.  Prior to a hearing on the petition, both sides moved for summary judgment after agreeing that there were no material issues of fact.  In support of his petition for judicial review, Long filed in the circuit court, an affidavit, which he signed; he said in the affidavit that he was told by a representative of IWIF that his premiums for the year beginning May 15, 2012 "would be based upon my gross profits of $48,000."  No explanation was given in the affidavit, or

[9](...continued)

The Commission, having granted the Motion for Rehearing, finds on the issue presented that the average weekly wage is $496.44.

The claimant submitted his 2011 tax return.  This document is the best evidence of the correct average weekly wage.

The claimant earned a total of $16,879.00 in 2011.  Previous Orders of the Commission reveal that the claimant only worked from 1/1/11 to 8/19/11 and was out of work for the remainder of the year with the exception of a trial period when he worked part-time from 9/21/11 to 10/31/11.

The period from 1/1/11 to 8/19/11 is 34 weeks.

Thus, the correct average weekly wage is $496.44 which was calculated by taking the full earnings for the year ($16,879.00) and dividing that figure by 34 weeks.  The Commission recognizes that this number is slightly higher than the actual average weekly [wage] because to be precisely accurate the amount earned while working from 9/21/11 to 10/31/11 should be deducted from the 2011 earnings before dividing by 34, but the Commission does not have that post-injury wage information available.

elsewhere, as to why Long would need workers' compensation insurance for the period beginning May 15, 2012. After all, he introduced evidence at the August 2013 hearing that he hadn't worked since October 31, 2011 and, according to his counsel, was not expected to work ever again.

The motions judge delivered an oral opinion in which he concurred in the views set forth in the Commission's August 13, 2013 order. This timely appeal followed.

## II.
## Standard of Review

In this case, the main issue presented is one of law, *i.e.*, whether the AWW of a claimant who is self-employed at the time of injury should be based upon the income the worker receives after deducting business expenses or upon the gross profits of the sole proprietorship, without considering business expenses. Because that issue is one of law, we review the decision *de novo*, without deference to the decisions of either the Commission or the circuit court. *Gross*, *supra*, 331 Md. at 45-48. *See also Hull v. Aetna Ins. Co.*, 541 N.W.2d 631, 634 (Neb. 1996).

## III.
## Analysis

Long contends on appeal, as he did below, that the AWW must be based upon the "gross wages" of the sole proprietor in the appropriate period before the accident. It is true, of course, that an AWW is ordinarily based upon "gross wages." *See* COMAR 14.09.03.06. But, Long equates the "gross wages" of a sole proprietorship with "gross income." Like the

Commission, we are not persuaded that when considering the AWW of a sole proprietor that the terms "gross wages" and "gross income" are synonymous.

In support of his contention that AWW should be based on gross income of the sole proprietorship rather than net income, appellant cites only one reported[10] case that actually supports that contention, *viz.*, *Little Suwannee Lumber Co. v. Fitzgerald*, 322 S.E.2d 347 (Ga.Ct.App. 1984) (for purposes of determining AWW, "production costs" incurred by a self-employed claimant should not be deducted from amount paid to claimant by a general contractor, where the general contractor deducted workers' compensation insurance premiums based on gross receipts).

The only case we have found that analyzed the *Fitzgerald* case in depth is *Stephen v. Avins Const. Co.*, 478 S.E.2d 74 (S.C.Ct.App.1996). In *Stephen*, the South Carolina Court of Appeals rejected the analysis set forth in *Fitzgerald* and explained why:

> Difficulties are inherent in using gross pay for the purpose of determining the "earnings of the injured employee." A plethora of business expenses may be encapsulated within the gross pay received. Examples of expenses not included in computing the earnings of a covered person are

---

[10]In support of the proposition that "many foreign jurisdictions recognize the impropriety and inequality of using net profits in calculating AWW," Long cites an unreported case from the North Carolina Court of Appeals, *Pruett v. Pruett Floor Covering*, 592 S.E.2d 619 (N.C.Ct.App.2004). Even if we were to assume, purely for the sake of argument, that an out-of-state unreported case might potentially have persuasive value, it would not help Long. In *Pruett* the claimant and his wife operated a sole proprietorship. The Court held, based on claimant's testimony, that he performed "seventy to seventy-five percent of the [business's] intake" of the sole proprietorship and that the Commission did not err in determining that his AWW was 70% of the net profits. In other words, in that case, a percentage of net profits was used "to calculate AWW," not a percentage of gross profits.

-11-

automobile allowances [*Bosworth v. 7-Up Distrib. Co.*, [4 Va.App.161] 355 S.E.2d 339 (1987)]; mileage expenses [*Wright v. Wright*, 306 S.C. 331, 411 S.E.2d 829 (Ct.App.1991)]; equipment rentals [*Dickerson, Inc., et al. v. McCleary*, 498 So.2d 651, 652 (Fla.Dist.Ct.App.1986) ("[W]hen an employee furnishes both services and equipment, and the furnishing of equipment is a specified and substantial portion of the contract, the amount legally attributable to rental of the equipment should not be included in determining the employee's average weekly wage.")], [*Florida Timber Prods. v. Williams*, 459 So.2d 422 (Fla.Dist.Ct.App.1984) (lease or rental of business equipment from employer or any other person is a business expense not included in determining average weekly wage; reasonable depreciation attributable to all equipment, both owned and being purchased by claimant for 13-week period prior to claimant's accident, is the proper business expense to be attributable to the equipment)]; labor, fuel, repair bills, and insurance [*Florida Timber Prods. v. Williams*, *supra*]; and depreciation on business equipment, interest on business debts, and the purchase price of a saw [*Baldwin v. Piedmont Woodyards, Inc.*, [58 N.C.App. 602] 293 S.E.2d 814 (1982) (expenses incurred in producing revenue should be deducted)].

On his income tax form, Stephen deducted the following business expenses: advertising ($25), car and truck expenses ($6492), legal and professional services ($124), office expenses ($50), supplies ($520), travel ($480), meals and entertainment ($2000), utilities ($260), wages ($7500), and materials ($5869).

The quiddity of Stephen's contention to support a calculation based on gross pay is the deduction of Workers' Compensation premiums from his gross pay by Avins. Facially, this would seem to justify the use of gross pay rather than net pay. However, we reject this argument and hold that reimbursements received by Stephen cannot be the basis for a computation of his "earnings." The Workers' Compensation Commission was correct in calculating the "earnings" of Stephen by using Stephen's "average weekly wages [of $272.09], based upon his tax returns as a self-employed subcontractor, . . . resulting in a compensation rate of $181.39." Stephen's gross receipts totaled $37,070.00. His net profits totaled $14,150.00. Stephen's net profit, $14,150.00, divided by 52 (number of weeks in a year) totals $272.09. Two-thirds of $272.09 equals $181.39.

*Id*. at 80-81.

The most recent, and most analogous case to the one *sub judice*, is *Vite v. Vite*, 377

S.W.3d 453 (Ark.Ct.App.2010). Gilberto Vite, a self-employed carpet layer, suffered a

back injury while laying carpet in November 2007. *Id*. at 455. Mr. Vite brought a workers'

compensation claim in which he contended that his AWW should not be based upon his net

profit. *Id*. at 457. Evidence introduced before the Arkansas Workers' Compensation

Commission showed that after his accident, Vite filed a federal tax return for 2007. Schedule

C of that return showed gross receipts for 2007 of $292,734, but business expenses and

depreciation totaling $265,695 for a net profit of $27,039. *Id*. at 458.

Before the Commission, Mr. Vite admitted that in determining his AWW, certain

business expenses, such as depreciation, should be deducted from his gross receipts. *Id*. at

458. He maintained, however, that business expenses for "car and truck expenses" and

"insurance" and "legal and professional services" should not have been deducted. *Id*. The

Commission disagreed and based the AWW on Vite's $27,039 net income.

That decision was affirmed by the Arkansas Court of Appeals. In affirming the

decision, the *Vite* Court quoted extensively from *Hunt v. Lovett*, a case decided by the

Arkansas Workers' Compensation Commission and filed on September 16, 1996. *Id*. at 457.

The *Vite* Court said:

> *Hunt v. Lovett* was the Commission's case of first impression addressing what
> portion of business expenses, if any, should be deducted from a sole
> proprietorship's gross income in calculating average weekly wage. [The *Hunt*
> decision] reads in pertinent part:

Although the claimant insists that no expenses should be deducted, other states ... have held that a sole proprietorship's net earnings should be used as the basis for determining a claimant's wages because inclusion of unreimbursed business expenses does not accurately reflect a claimant's actual earnings during the period. *See*, *Oak Industries v. Industrial Commission of Arizona* [153 Ariz. 608], 739 P.2d 829 (Ariz.Ct.App. 1987); *Happle Solar Contractors v. Happle*, 547 So.2d 1035 (Fla.Ct.App.1989); *D & C Express, Inc. v. Sperry*, 450 N.W.2d 842 (Iowa 1990); *LaFleur v. Hartford Insurance Company*, 449 So.2d 725 (La.Ct.App.1984); *Baldwin v. Piedmont Woodyards, Inc.* [58 N.C.App. 602], 293 S.E.2d 814 (N.C.Ct.App.1982); *Nortrim [Nortim], Inc. v. Workmen's Compensation Appeal Board* [150 Pa.Cmwlth. 196], 615 A.2d 873 (Pa.Commw.Ct.1992); *Meredith Construction Company, Inc. v. Holcombe* [21 Va.App. 537], 466 S.E.2d 108 (Va.Ct.App.1996). Net earnings represents the difference between gross income and necessary business operating expenses. *Duvio v. Continental Casualty Co.*, 446 So.2d 436 (La.Ct.App.1984); *Nortim, Inc.*, *supra*; *Florida Timber Products v. Williams*, 459 So.2d 422 (Fla.Ct.App.1984).

377 S.W.3d at 457.

The cases cited in *Hunt v. Lovett*, which were relied upon by the court in *Vite*, all stand for the proposition for which they were cited. Additional support for the rule enunciated in *Hunt* and adopted in *Vite* are: *Hull v. Aetna Ins. Co.*, *supra*, 541 N.W.2d at 635 (the business expenses shown on claimant's tax returns are presumed to be correct, and, unless the presumption is rebutted, should be deducted from gross profits to determine AWW); *Christian v. Riddle & Mendenhall Logging*, 450 S.E.2d 510, 513 (N.C.Ct. App.1994) (AWW to be determined based on gross income less business expenses and a "reasonable" amount for depreciation); *State ex rel. Richards v. Indus. Comm.*, 673 N.E.2d 667, 670-71 (Ohio Ct.App.1996) (in determining post injury AWW, net income, not gross income, should be used); *Stephen v. Avins Const. Co.*, *supra* 478 S.E.2d at 80-81.

-14-

In the case of *In re Carnahan*, 821 A.2d 1122 (N.H. 2003), the Supreme Court of New Hampshire was required to compute Timothy Carnahan's AWW. *Id*. at 1124. With some exceptions not here relevant, the governing New Hampshire statute provided that the AWW should be calculated by dividing "gross earnings" over a period of between 26 to 52 weeks, in order to yield a result most favorable to the employee. *Id*.

Carnahan, a self-employed truck driver, had a gross income of $129,729 in the year he was injured, but in that same year, he had business expenses of $102,184. *Id*. at 1123-24. Thus, Carnahan's net profit was approximately $27,545. *Id*. at 1124. Carnahan argued on appeal that his expenses as a truck driver for motels, fuel, food, clothing, and laundry should not be deducted from gross receipts in order to determine AWW. *Id*. at 1125. Carnahan maintained that "gross earnings" is synonymous with "gross income." *Id*. at 1124. The New Hampshire Supreme Court rejected that construction, stating:

> This construction, however, produces an absurd result. An independent contractor with a gross income of $200,000 who incurs $150,000 in business expenses would have "gross earnings" of $200,000. At the same time, an employee who does the same work, receiving a salary of $50,000, while his employer covers business expenses of $150,000, would have only $50,000 in "gross earnings." Nothing in the statute suggests that self-employed contractors should be entitled to such a windfall.

*Id*.

The out-of-state cases discussed so far <u>do</u> <u>not</u> stand for the proposition that AWW <u>must</u> <u>always</u> be based upon the net profits of the sole proprietorship. Instead, the cases cited stand for the proposition that in determining AWW, gross earnings of a sole proprietorship

-15-

(*i.e.*, earnings without deduction for business expenses) should not be used and that in many situations AWW should be based on net profits. This is important because appellant's main argument before the Commission was that gross earnings should always be used in calculating AWW.

The general rule applied by our sister states is that "profits derived from a business are not to be considered as earnings and cannot be accepted as a measure of loss of earning power unless they are almost entirely a direct result of [the claimant's] personal management and endeavor." *Clingan v. Fairchance Lumber Co.*, 71 A.2d 839, 840 (Pa.Super.Ct.1950). (emphasis added.) *See also Joy Technologies, Inc. v. Workmen's Comp. App. Board*, 624 A.2d 710, 711 (Pa.Commw.Ct.1993); *Fruehauf Corp. v. Workmen's Comp. App. Bd.*, 559 A.2d 609, 610 (Pa.Commw.Ct.1989). The exception to the general rule is applicable in this case because Long was the only employee of the sole proprietorship, and all of the income of the sole proprietorship was the direct result of his "personal management and endeavor."

Mindful of this general rule, it is easy to find cases in which AWW was not based on net profit. In his brief, appellant relies on such cases, namely: *McAnelly v. Wilson Pallet & Crate Co.*, 460 S.E.2d 894 (N.C.Ct.App.1995); *Mail Boxes v. Industrial Comm. of Arizona*, *supra*; *Thompson v. Harold Thompson Trucking*, 748 P.2d 430 (Kan.Ct.App.1987); and *Washington Post v. District of Columbia Dep't of Employee Servs.*, 675 A.2d 37 (D.C.1996). These cases (and others) are cited by appellant in support of his position that the Commission in the subject case erred by not utilizing the "gross income" of the sole proprietorship. But,

as will be shown, none of these cases supports the position Long took before the Commissioner or in the circuit court. All four cases are distinguishable because they involve situations where either: 1) the sole proprietorship had no net income; or 2) before the Commission, the claimant presented some alternative to net income as a basis of determining AWW. In none of the cases did the Court suggest that AWW should be determined by the sole proprietorship's gross rather than net income.

The claimant in *McAnelly* owned and operated Wilson Pallet & Crate Company as a sole proprietorship. 460 S.E.2d at 895. The claimant, David McAnelly, suffered a job-related injury on November 17, 1989, and sought compensation from his insurer pursuant to the North Carolina Workers' Compensation Act. *Id*. In the year McAnelly was injured, McAnelly's sole proprietorship earned no profit. *Id*. at 899. Nevertheless, he was paid "wages," as shown by the payroll records of the sole proprietorship. *Id*. The *McAnelly* Court held that the Deputy Workers' Compensation Commissioner did not err when he declined to calculate AWW based on the net profits and used instead wage records of the sole proprietorship to determine AWW. *Id*. at 898-99. As can be seen, the holding in *McAnelly* is entirely inapposite here because, in the case *sub judice*, the sole proprietorship never paid Long wages.

In *Mail Boxes, etc., U.S.A. v. Industrial Comm. of Arizona*, the Arizona Supreme Court was required to determine a self-employed claimant's average monthly wage in a situation where claimant never was paid a wage and where the sole proprietorship lost money

during the year the claimant was injured. 888 P.2d 778-79. Although never paid a wage, it was established that the claimant worked an average of 50 hours per week, approximately, and the fair value of his services as a general manager was $8 per hour. *Id*. at 778.

The administrative law judge ("ALJ") who initially heard the case determined that the claimant's average monthly wage was approximately $1,733.32; that figure was calculated by multiplying $400 ($8 by 50) by the number of weeks in a month. *Id*. at 779 n.1. The Arizona Supreme Court held that in such a situation the appropriate way to measure the lost earning capacity of a self-employed individual was the market value of the claimant's services to the sole proprietorship. *Id*. at 780-81. The Court affirmed the ALJ's decision that the market value of the claimant's services was $1,733.32 per month because that was the amount the sole proprietorship would have had to pay a general manager if the claimant had been merely a passive investor in the company. *Id*. at 781.

The *Mail Boxes* case provides a good illustration of a situation where it would be unfair to the claimant to determine an average wage based on net profit. In that case, the sole proprietorship had no profit in the year the claimant was injured, but, nevertheless, the trier of fact was given some alternative means of determining the claimant's average wage.

In *Thompson v. Harold Thompson Trucking*, 748 P.2d 430 (Kan.Ct.App.1987), the claimant was the widow of Harold Thompson, the sole owner of Harold Thompson Trucking Company. *Id*. at 432. Mr. Thompson was killed while performing services for the company on September 14, 1981. *Id*.

His widow brought a workers' compensation claim against the sole proprietorship and its insurer. One of the questions presented was how the decedent's AWW should be computed. *Id*. at 437. Thompson Trucking showed a tax loss for 1981, the year of Mr. Thompson's death. The case was complicated by the fact that Mr. Thompson was never paid a fixed salary. *Id*. Instead, the company bookkeeper, Mr. Thompson's widow, routinely wrote Mr. Thompson checks to cover the decedent's personal expenses and her own expenses. The checks covered costs for food, clothing, home and automobile insurance. The amount of the checks fluctuated every month. *Id*. During the 26 weeks immediately preceding Mr. Thompson's death, $5,626.05 was paid to the decedent to cover what the bookkeeper called "owner withdrawals for personal expenses." *Id*.

The ALJ, in determining AWW, divided the amount of the checks paid by 26 and arrived at an average "gross weekly wage" of $216.39. Under Kansas law (K.S.A. 44-511(a)(3)), the term "wage" meant "the total of the money and any additional compensation which the employee receives for services rendered for the employer in whose employment the employee sustains an injury by accident arising out of and in the course of such employment." *Id*. at 437.

The Kansas Court of Appeals affirmed the ALJ's determination that Mr. Thompson's gross weekly wage was $216.39. *Id*. at 438. In reaching that conclusion, the *Thompson* Court held that "[s]ince many wage earners support their families (paying for their food, clothing, and home and car insurance) from their average weekly wage, the 'owner

withdrawals' from the Thompson Trucking account which were used as wages could reasonably be the basis for Thompson's salary." *Id*. Nothing in the *Thompson* case supports appellant's contention that AWW should be calculated by use of a gross income figure.

*The Washington Post v. District of Columbia Department of Employment Services*, 675 A.2d 37 (D.C.App.1996), concerned a *Washington Post* employee, Adil Mukhtar, who suffered an on-the-job injury while working for the *Post* in 1992. *Id*. at 39-40. At the time of injury, besides working for the *Washington Post*, Mukhtar was also the sole proprietor of a used car dealership that employed three persons. *Id*. at 42.

Mukhtar filed a workers' compensation claim with the District of Columbia Department of Employment Services. *Id*. at 39. The Department found that the claimant suffered a temporary total disability due to the 1992 accident. Before the workers' compensation examiner, attorneys for the *Washington Post* wanted to find out what profit the claimant made from his used car dealership post-accident in order to establish whether there had been any actual loss of earning capacity on the claimant's part after considering the amount of profits made by the car dealership. *Id*. at 42. The workers' compensation examiner allowed the *Washington Post* to present evidence as to what portion, if any, of the claimant's business income was the direct result of the claimant's personal management endeavor but would not allow the employer to show what profit Mukhtar earned from the car dealership. *Id*.

The District of Columbia Court of Appeals affirmed the examiner's decision and held that only the amount of profit that claimant derived from his own personal work at the car dealership and his personal management of the other salesmen was relevant in establishing the claimant's post-accident "wages." *Id.* The court reached that conclusion by application of the principle that, in determining AWW, "profits" are irrelevant, unless the profits came about due to the claimant's "personal management and endeavor." That holding is completely irrelevant in a case like the subject case, where the net profit Long made was "entirely the direct result of [Long's] personal management and endeavor."

We hold that under the circumstances of this case, the Commission did not err in concluding that AWW should be based on Long's net profits. As demonstrated, the overwhelming majority of cases decided by our sister states supports the conclusion reached by the Commission in this case. To disregard appellant's business expenses in calculating the AWW of a sole proprietor would lead to an unjustifiably inflated AWW figure – a figure far higher than the economic advantage Long gained by working. *See In Re Carnahan*, *supra*, 821 A.2d at 1124.

## IV.

Long also contends, in the alternative, that his AWW should be based on the sole proprietorship's gross income because "gross income" was the figure IWIF used in calculating the premium for workers' compensation insurance in the year of his injury. We

will assume, for purposes of this appeal, that appellant is correct in regard to the basis for the premium in 2011, although the matter is not free from doubt.[11]

In support of the contention that the AWW should be based on gross income if the insurer used gross income to calculate AWW, appellant relies on one out-of-state case and two cases from Maryland, *viz*.: *Mayflower Corp. v. Davis*, 655 So.2d 1134 (Fla.Dist.Ct.App. 1994); *Picanardi v. Emerson Hotel Co.*, 135 Md. 92 (1919); and *Stevenson v. Hill*, 171 Md. 572 (1937). We will discuss those cases *seriatim*.

In *Mayflower* the claimant's husband (Mr. Davis) drove a truck, as an independent contractor for Mayflower Corporation ("Mayflower"). 655 So.2d at 1135. As part of his contract with Mayflower, Mr. Davis was required to pay workers' compensation premiums through Mayflower. Those premiums were deducted from the monies due to Mr. Davis from Mayflower. *Id*. Mr. Davis, and all other truck drivers who were independent contractors associated with Mayflower, paid workers' compensation premiums based on an estimate of the driver's annual earnings, which for every driver, every year, was estimated to be $44,669. *Id*. 1135-36.

A few years after this arrangement was established, the claimant, who was Mr. Davis's wife, began working with her husband as a truck driver. *Id*. at 1135. The two were

---

[11]Like the first issue presented, we review the decision of the Commission and the circuit court as to the second issue *de novo*. *See Walter v. Gunter*, 367 Md. 386, 392, 788 A.2d 609, 612 (2002) ("[W]here the order involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review.").

partners and shared income on a 50-50 basis. *Id*. In 1986,

the year Mrs. Davis was injured, Mayflower paid Mr. Davis a total of $114,466.05. But,

after expenses, the couple netted only $11,939.20. *Id*.

In *Mayflower*, the question presented to the Florida Appellate Court was how the

claimant's AWW should be calculated. *Id*. at 1136. Relevant to that inquiry was a Florida

statute (section 440.14(1)), that required that AWW be based upon the average wage earned

by the claimant during the thirteen weeks immediately preceding the accident. *Id*. If that

statute were applied, Mrs. Davis would be entitled to no compensation benefits. *Id*. at 1137.

But, prior cases in Florida had established the principle that an independent contractor's

AWW could be based on the rate contracted for in the company's workers' compensation

policy, rather than a rate computed under section 440.14(1), if two conditions were met: first,

if the contract rate bore a reasonable relationship to the claimant's actual wages; and second,

if the claimant would not have otherwise been entitled to any benefits. *Id*. at 1136.

Mrs. Davis's case was heard before a Florida Judge of Compensation Claims ("JCC")

who determined, using the precedents above mentioned, that Mrs. Davis's AWW should be

calculated based on the assumption that she earned one-half of $44,669 annually, or $429.51

per week, because "the parties had contracted for that amount." *Id*. The Florida Court of

Appeals affirmed the decision of the JCC. *Id*. at 1137. The *Mayflower* Court held that: 1)

the claimant had met her burden of showing that the rate set forth in the insurance policy was

"reasonably related to the value of the service provided," (*id*. at 1138); and 2) if section

440.14(1) were applied, Mrs. Davis would be entitled to no workers' compensation benefits. *Id*. at 1137.

The *Mayflower* decision does not support Long's position that, in this case, AWW should be calculated based on insurance premiums charged. In fact, under the criteria set forth in the *Mayflower* case, Long would be entitled to no greater recovery than that awarded by the Commission because Long did not prove that if insurance premiums were not used as a basis he would be entitled to no compensation, nor did he show that the basis for the insurance premium bore a reasonable relationship to the actual wages earned.[12]

*Picanardi* involved a baker who was employed by the Emerson Hotel Company and was paid $50 per month plus board. 135 Md. at 92. On July 1, 1917, the baker was injured while working at the Emerson Hotel. The baker made a workers' compensation claim, in which he presented the following question: "Is a claimant entitled under the [Workmens' Compensation Act] to have the money value of board included as a part of his weekly wages in computing the amount of compensation to which he may be entitled, where the money value of the board had not been fixed between his employer and himself at the time of the

---

[12]In his opening brief, Long states that the *Mayflower* case held "that where it is difficult to calculate independent contractor's average weekly wage, it was to be calculated according to the claimant's compensation insurance premiums." This was not the holding of the *Mayflower* case. But, even if it were, appellant would not benefit because in the subject case, it was not difficult to calculate AWW - as shown by the Commission's written order. *See* n.9, *supra*.

hiring?" *Id*. at 93-94. The Court of Appeals answered that question in the negative.[13]

The reason for that answer was that a provision in the Workmen's Compensation Act of 1914, as amended, provided that the State Accident Fund and private insurers were to base premiums on the employer's "payroll." The word "payroll" under the statute did not include the money value of board unless that money value had been "fixed by [the] parties at the time of hiring." *Id*. at 95-96. The Court reasoned that because neither the State Accident Fund nor private insurers could charge premiums for "board" when the money value of board was not fixed at the time of hiring, they should not be required to pay compensation to the injured worker based on an AWW that included the value of board. *Id*. In the words of the *Picanardi* Court,

> It is clear the Legislature did not intend, as to insurance in the State Accident Fund, that board was to be included as wages unless its money value was fixed by the parties at the time of the hiring . . . [I]t would be unreasonable to hold that it was intended [by the Legislature] that the premiums and rates of insurance from which the fund to pay losses were derived were to be calculated upon a narrower basis than that adopted for the allowance of compensation.

*Id*. at 96.

The *Picanardi* case was resolved by determining legislative intent, *i.e.*, because the General Assembly did not allow premiums to be calculated based on the value of "board" then, it followed, the legislature did not intend that the insurer should have to pay claimants

---

[13]The result arrived at in the *Picanardi* case would be different today because the language of the statute has been changed. Now, the reasonable value of housing, lodging and meals must be included when determining AWW. *See* LE § 9-602(a)(2).

based on the value of board. The *Picanardi* case is inapposite because here legislative intent is unknowable, inasmuch as no statute states, or even suggests, how an insurer should set premiums for a self-employed individual who receives no actual wages.

In *Stevenson v. Hill*, the Court of Appeals was called upon to construe section 36 of the Compensation Act as it was then written. 171 Md. at 573. The section at issue provided for awards of compensation to be computed on the basis of the AWW of injured workmen. Section 65 of the Act defined AWW as "average weekly wages earned by an employee when working on full time." *Id*. The question that the *Stevenson* Court was required to answer was, "[H]ow is compensation to be computed when during a year before an injury and death there has been no working on full time?" *Id*.

In *Stevenson*, the claimant was a coal miner who, because of the country-wide depression, did not work full-time. He contended that the basis under the statute for calculating AWW was not "the average which the workman earned when working at full time of actual operation of the mine, or mines in the region, but that which would have been earned if the mines had been working to capacity, or to the limit of daily and weekly working time in the region, eight hours a day for six days a week . . . ." *Id*. at 575.

The *Stevenson* Court rejected the claimant's construction of the statute and held that the AWW earned by an employee when working was to be determined by an average of the amount that the employee might have earned working all the time that the mines in the region generally were operating over a period immediately preceding the injury. *Id*. at 573-75. In

reaching that decision, the *Stevenson* Court applied the principle enunciated in *Picanardi*,

that because the insurer is required to charge premiums based on actual payroll, the insurer

could not be required to pay benefits on any broader basis than "payroll." *Id*. at 576-77. The

*Stevenson* case is inapposite for the same reason as *Picanardi*.[14]

---

[14]To some extent, at least, appellant also relies on *Crowner v. Balto. United Butchers Ass'n*, 226 Md. 606 (1961), to resolve the question concerning insurance premiums. In that case, the claimant, at the time of his injury, worked two jobs. He was employed by Armour & Company, full-time, where he earned $91 per week. *Id*. at 608. He had a second job where he worked one-day per month, as a laborer, for Baltimore United Butchers Association. In that second job, he was paid $15 each month. *Id*. While working for the Butchers Association, he was injured. *Id*.

The issue arose in that case as to how his AWW should be calculated. The claimant contended that in determining his AWW, the Commission should include not only what he earned from the Butchers Association each month, but also what he earned while working for Armour & Company. *Id*. The Commission ruled that the claimant's AWW should be calculated solely based upon what he earned at his $15 per month job. The Court, in *Crowner*, affirmed the decision of the Commission that AWW should be based on what he earned from the Butchers Association. *Id*. at 612-13. The Court explained:

> In the instant case the claimant entered into a contract of hire with the employer, the terms of which were specific as to all factors. The employer insured the claimant's employment in accordance with the provisions of the Workmen's Compensation law. By reason of the contract of hire the employer incurred certain obligations under the Compensation law. To impose other additional obligations on the employer and insurer, both of whom were, at the time of the accident, complying fully with all of their obligations under both the statutes and their contracts, would be unfair and, by judicial construction, extend the coverage of the compensation law into an area which would lead to disruption and confusion. If the law should be broadened to include the appellant's claim it should be modified by the Legislature, and not by our decision in this case.

*Id*.

(continued...)

-27-

In this case, appellant does not claim that IWIF is estopped (by the purported fact that it charged appellant workers' compensation premiums for the year he was injured based on gross income) from arguing that AWW should be based on net income. Instead, he argues that the rule should be that if premiums were based on gross income, then AWW must be calculated by the Commission on that same basis. Adoption of such a rule in a case like the one at bar would result in a sole proprietor being able to recover an AWW far greater than the amount of money he or she was out-of-pocket as a result of not being able to work. Therefore, as did the South Carolina Court of Appeals in *Stephen*, *supra*, we reject appellant's proposed rule. *See Stephen*, 478 S.E.2d at 81.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

[14](...continued)
We fail to see how the decision in *Crowner* has any relevance to the case at bar.